THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KORY PIERSON, Defendant-Appellee.

Fifth District No. 5—90—0751

Opinion filed June 26, 1992.

William Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE HENRY LEWIS delivered the opinion of the court:

The State appeals a judgment of the circuit court of Madison County dismissing an armed robbery charge filed against the defendant, Kory Pierson. On appeal, the State contends that the court erred in dismissing the charges against the defendant on the basis that the prosecutor had violated its agreement with the defendant, wherein the prosecutor had agreed not to prosecute the defendant on any charge in exchange for his truthful statements. The State asserts that the agreement was unenforceable since the defendant did not relinquish any constitutional rights and he did not fulfill his part of the bargain when he failed to tell the truth. We affirm.

The facts of this case are few and are as follows: On June 15, 1990, the prosecutor and the defendant entered into a written agreement wherein the prosecutor agreed not to prosecute the defendant for the offense of murder if the defendant agreed to make a statement, which the defendant did. That same day, the State sought a second statement from the defendant as the State had determined that the defendant's first statement was not truthful based upon other physical evidence obtained from the scene of the crime. In exchange for the defendant's subsequent statement,

the assistant State's Attorney orally offered the defendant total immunity from prosecution on any charge. The assistant State's Attorney made this offer of total immunity on at least three occasions. Following the initial oral offers, the defendant reiterated that he had told the truth in his first statement. However, after the last offer, the defendant gave the assistant State's Attorney and law enforcement officials another statement, which the State determined was also untrue. One month later, on July 13, 1990, the State filed a criminal information against the defendant, charging him with the offense of armed robbery. Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a).

On August 17, 1990, the defendant filed a motion to dismiss the charge of armed robbery. In the motion, the defendant asserted that the State had violated an oral agreement of total immunity from prosecution made with him in exchange for his second statement to law enforcement officials. The defendant alleged in his motion that the State's reneging on its promise of nonprosecution violated his fifth amendment rights (U.S. Const., amend. V), which he had relinquished on the enticement of the State's promise.

The court conducted a hearing on the defendant's motion on October 30, 1990. At this hearing, the State stipulated that it had entered into a written agreement with the defendant in which the State promised not to prosecute the defendant for murder. However, the State denied that there was a subsequent oral agreement promising the defendant total immunity from prosecution on any charge. The prosecutor also argued that, even if there were an oral agreement, the agreement would be unenforceable since the defendant had not relinquished any constitutional rights. The State asserted that, since the statement obtained from the defendant as a result of the assistant State's Attorney's promise was false and was not self-incriminating, the defendant's constitutional rights were not violated.

A videotape of the defendant's initial statement made pursuant to the written agreement of June 15, 1990, and of the assistant State's Attorney's and law enforcement officials' attempts to obtain the defendant's subsequent statement was also presented at the hearing on the defendant's motion. In this videotape, the assistant State's Attorney explained to the defendant that he (the assistant State's Attorney) and the law enforcement officials did not believe the defendant's initial statement of the events of the crime was truthful. The assistant State's Attorney advised the defendant that specific objective evidence obtained from the crime scene did not correspond to the defendant's statement. Because of the assistant

State's Attorney's disbelief in the defendant's initial statement, the assistant State's Attorney attempted to persuade the defendant to make a further statement. As an inducement for a further statement from the defendant, the assistant State's Attorney, in three separate instances, offered not to prosecute the defendant for any crime if the defendant would tell the law enforcement officials the truth. At first, in response to the assistant State's Attorney's inducements, the defendant asserted that his first statement was the truth. Finally, after much persuasion on the part of the assistant State's Attorney, and after the assistant State's Attorney's last oral offer of total immunity, which the assistant State's Attorney assured the defendant was binding, the defendant made another statement to the law enforcement officials in which the defendant stated he was not present at the scene of the crime. Following the presenting of this evidence and the arguments of the State and the defendant, the court dismissed the armed robbery charges and discharged the defendant. This appeal ensued.

On appeal, the State argues that the defendant only relied on the written agreement not to charge him with murder when he made his statement and relinquished his fifth amendment rights based upon the written agreement. However, the State asserts that the oral promise followed the written agreement, and since the defendant had previously relinquished his privilege against self-incrimination, he relinquished nothing for the oral promise and gave up no constitutional rights in reliance on the oral promise of complete immunity. Further, the State contends that since the defendant gave false information in the statement induced by the oral promise of complete immunity, and this false information was not incriminatory (*i.e.*, the defendant denied being present at the scene of the crime), the agreement was not enforceable. Therefore, the State asserts that the circuit court erred in dismissing the charges against the defendant. We disagree.

In *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350, the supreme court noted that the bargaining relationship between a defendant and a prosecutor is universally recognized and that an agreement, a "plea bargain" if you will, is an essential component of the administration of justice. The supreme court stated that it is the State's Attorney who has been given the responsibility of evaluating evidence and of determining what offense, if any, can and should be charged, and in fulfilling this responsibility, a prosecutor has been given a broad range of discretion. (*People v. Starks*, 106

Ill. 2d 441, 478 N.E.2d 350.) The supreme court, in discussing agreements made by prosecutors with defendants, stated as follows:

"The prosecution must honor the terms of agreements it makes with defendants. To dispute the validity of this precept would surely result in the total nullification of the bargaining system between the prosecution and the defense." (*People v. Starks*, 106 Ill. 2d at 449, 478 N.E.2d at 350.)

The supreme court concluded that if an agreement had been struck between a defendant and the prosecutor, then the State must abide by the agreement, especially where there is a relinquishing of a constitutional right.

■ Here, the State does not disagree that there was an oral promise made to the defendant but argues that the defendant did not relinquish his constitutional right to self-incrimination. The State's argument urges us to conclude that because the defendant made an initial statement which was incriminatory, the defendant's right against self-incrimination was relinquished forever. We do not find this persuasive and we decline to so find.

■ Similarly, the State's argument that because the defendant's subsequent statement was not self-incriminating, even though obtained through the inducement of the assistant State's Attorney's oral promise, the agreement was not enforceable is also not persuasive. The State's approach appears to be one of hindsight, for when the assistant State's Attorney sought the second statement, he could not know in advance that the defendant's second statement would not be incriminating or that it was not truthful. We cannot look at a statement after a promise has been utilized to overcome a constitutional right to silence, and we cannot hold that the agreement is not binding.

This case is similar to the Florida case cited with approval by the supreme court in *Starks* (*State v. Davis* (Fla. App. 1966), 188 So. 2d 24), for in the Florida case, the prosecutor promised not to prosecute the defendant for the offense of first-degree murder if the defendant agreed to take a polygraph examination and if the results of the examination showed the defendant to be telling the truth. The defendant agreed and successfully passed the polygraph test. A second examiner reviewed the results of the defendant's polygraph examination, and the second examiner questioned whether the the results of the polygraph showed that the defendant was telling the truth, so the prosecution refused to dismiss the indictment against the defendant. The defendant was tried and convicted, but on appeal, the Florida Appellate Court overturned the

conviction, finding that the prosecution had made a bargain which it did not fulfill, and that the bargain cannot be lightly disregarded. From the facts of the Florida case, it is a reasonable inference that the defendant did not tell the truth, and that his statement during the polygraph test was not self-incriminatory but exculpatory. Even so, the Florida court dismissed the defendant's charges. Additionally, the supreme court in *Starks* concluded that a statement made while taking a polygraph examination did involve relinquishing the defendant's fifth amendment right against self-incrimination, whether the defendant's statement was or was not truthful. The same reasoning would apply in this case, for, regardless of the truthfulness (which was determined by hindsight) of the statement, the defendant was nevertheless relinquishing his privilege against self-incrimination.

Further, simply because the defendant's statement was not directly self-incriminating does not mean that his privilege against self-incrimination was not applicable. The privilege of self-incrimination protects a defendant from being compelled to testify against himself *and* from otherwise providing the State with evidence of a testimonial or communicative nature. (*People v. Garza* (1981), 92 Ill. App. 3d 723, 415 N.E.2d 1328.) Thus, from evidence provided by a defendant after relinquishing his right to self-incrimination, evidence may be obtained from his statement which is indirectly incriminatory to him. Therefore, the defendant had relinquished his constitutional right to silence under the fifth amendment, and since the assistant State's Attorney did promise the defendant that he would not be prosecuted for any crime if he would make a second statement, the State must abide by this agreement. The circuit court's dismissal of the charges against the defendant was proper.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

GOLDENHERSH, P.J., and WELCH, J., concur.